**EXHIBIT** 4

1  Robert M. Kort (#016602)
2  Richard G. Erickson (#019066)
   SNELL & WILMER L.L.P.
3  One Arizona Center
   400 East Van Buren Street
4  Phoenix, Arizona 85004-2202
   Telephone: (602) 382-6000
5  Facsimile: (602) 382-6070
   Attorneys for Plaintiff Cynthia Reynoso



COPY

MAY 2 6 2005

6

7              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8                    IN AND FOR THE COUNTY OF MARICOPA

9   CYNTHIA REYNOSO, an Arizona          No.  CV2005-008557
10  resident,

11                       Plaintiff,

12  v.                                   VERIFIED COMPLAINT

13  ALEJANDRO REYNOSO, an Arizona
    resident; AR UTILITY SPECIALISTS,
14  INC., an Arizona corporation; and
    ARUSI, INC. f/k/a/ BINARY MASS
15  PROPULSION SYSTEMS, INC., an
    Arizona corporation,
16
                         Defendants.
17

18        Plaintiff Cynthia Reynoso ("Mrs. Reynoso"), for her Complaint, alleges as

19  follows:

20                              **Introduction**

21        1.    This is an action to enjoin a spiteful, invalid and unlawful attempt by the

22  Defendants to effectuate a purported merger transaction involving a closely held family

23  business -- without notice to or approval from -- the corporation's shareholders.

24        2.    Incredibly, Defendant Alejandro Reynoso ("Defendant Reynoso") has

25  purported to single-handedly approve a merger transaction that, if effective, would divest

26  Mrs. Reynoso of her entire ownership interest in AR Utility Specialists, Inc. ("AR

27  Utility"), which Mr. and Mrs. Reynoso jointly own as community property, by

28  (1) forcing a buy-out of Mrs. Reynoso's interest at an artificially unfair price unilaterally

1    set by Defendant Reynoso; and (2) making Defendant Reynoso the sole shareholder of a

2    "new" corporation that will continue to run the business operations of AR Utility,

3    utilizing all of AR Utility's assets. As set forth herein, Defendants' ill-conceived scheme

4    is unlawful and invalid for several reasons and should be enjoined by the Court.

5                        **Parties and Jurisdiction**

6         3.     Mrs. Reynoso is an Arizona resident and the owner of 49% of the

7    outstanding shares of AR Utility stock. Although Mrs. Reynoso is currently married to

8    Defendant Reynoso, dissolution of the Reynoso marriage is pending in the case of *In re*

9    *Reynoso*, Maricopa County Superior Court No. FN2004-001375 ("the Divorce

10   Proceeding"). Pending a final decree of dissolution in the Divorce Proceeding, Mrs.

11   Reynoso possesses a community proper interest in all of the outstanding shares of AR

12   Utility stock owned by Defendant Reynoso.

13        4.     Defendant Reynoso is an Arizona resident whose marital status is currently

14   subject to a pending judicial dissolution in the Divorce Proceeding.

15        5.     Defendant AR Utility is an Arizona corporation registered to do and doing

16   business in Maricopa County, Arizona. AR Utility has, from time to time, conducted

17   business under the d/b/a name of ARUSI, which is an acronym for AR Utility Specialists,

18   Inc. AR Utility's core business is providing engineering design services to utility

19   companies. AR Utility also performs certain construction and environmental remediation

20   services.

21        6.     Defendant Binary Mass Propulsion Systems, Inc. ("Binary Mass") is an

22   Arizona corporation that, upon information and belief, had not conducted any business

23   activities prior to May 13, 2005. Defendants purport to have recently changed the name

24   of Binary Mass to ARUSI, Inc. in connection with their unlawful attempt to merge AR

25   Utility into Binary Mass, but no corporate documents have been filed with the Arizona

26   Corporation Commission to effectuate the purported name change. Binary Mass is not

27   registered to do business in Arizona, nor is it a licensed contractor with the Arizona

28   Registrar of Contractors.

                            - 2 -

Snell & Wilmer
L.L.P.
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1    7.    Defendants have caused certain actions to occur in Maricopa County,

2  Arizona, from which Mrs. Reynoso's claims arise.

3    8.    This court has jurisdiction of this matter under A.R.S. § 12-123, and venue

4  lies in this case under A.R.S. § 12-401.

## General Allegations

6    9.    Defendant Reynoso and Mrs. Reynoso formed AR Utility in 1987 and, up

7  until 1997, each held 50% of the outstanding shares of AR Utility stock. In 1997, in

8  order to meet certain compliance requirements for AR Utility to be certified with the

9  Small Business Administration under its Section 8(a) program for minority-owned

10  businesses, Mrs. Reynoso agreed to transfer 2% of her AR Utility stock to Defendant

11  Reynoso, making Mr. Reynoso a 51% shareholder. At all times, Defendant Reynoso and

12  Mrs. Reynoso, who have been married since 1968, owned their respective shares of AR

13  Utility stock as community property.

14    10.    AR Utility is comprised of three divisions: (1) the engineering division,

15  which uses the d/b/a name of the EDM Group; (2) the construction division; and (3) the

16  corporate services division. Ruben Hinojos, who has been employed by AR Utility since

17  1994, is the President of the EDM Group and the key representative of AR Utility who

18  interfaces with AR Utility's utility customers. Eduardo Alonzo, who has been employed

19  by AR Utility as its Chief Financial Officer since 1994, is the head of the corporate

20  services division. Mrs. Reynoso, Mr. Hinojos, and Mr. Alonzo all sit on the five-person

21  Executive Officer Committee of AR Utility.

22    11.    Defendant Reynoso is the President and sole Director of AR Utility.

23    12.    Mrs. Reynoso is the Chief Operating Officer and Secretary of AR Utility.

24  Her job responsibilities include overseeing daily operational issues and handling human

25  resources and labor issues.

26    13.    The three children of Mrs. Reynoso and Defendant Reynoso, Michael,

27  Christopher and Stefanie, also work for AR Utility. Michael Reynoso is the head of AR

28  Utility's construction division.

- 3 -

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

14.     On March 31, 2004, Mrs. Reynoso initiated the Divorce Proceeding by filing a Petition for Dissolution of Marriage. Defendant Reynoso failed to file a response to the Petition, and a default was entered against him in the Divorce Proceeding.

15.     In the Divorce Proceeding, the Court entered a Preliminary Injunction that provides, among other things:

**1(a). RESTRICTIONS ON PROPERTY OF THE MARRIAGE:** That both parties are enjoined from transferring, encumbering, concealing, selling, or otherwise disposing of any of the joint, common or community property of the parties, except if related to the usual course of business, the necessities of life, or court fees and reasonable attorney fees associated with an action filed under this article, without the written consent of the parties or the permission of the court.

16.     On May 13, 2005, without any notice to or approval from Mrs. Reynoso or the Court, Defendant Reynoso caused AR Utility and Binary Mass to file with the Arizona Corporation Commission the following documents: (1) "Articles of Merger of AR Utility Specialists, Inc. Into ARUSI, Inc. (Formerly Binary Mass Propulsion Systems, Inc.)" ("Articles of Merger"); and (2) "Approved and Adopted Plan of Merger of AR Utility Specialists, Inc. into ARUSI, Inc. (Formerly Binary Mass Propulsion Systems, Inc.)" ("Plan of Merger").

17.     Neither AR Utility nor its director, Defendant Reynoso, informed or notified Mrs. Reynoso of the Articles of Merger or Plan of Merger before filing these documents with the Arizona Corporation Commission on May 13, 2005. Mrs. Reynoso first learned of the purported merger transaction and the filing of the merger documents on May 16, 2005, only after Binary Mass faxed them to Mrs. Reynoso's divorce attorney.

18.     According to the Articles of Merger and Plan of Merger filed by AR Utility and Binary Mass with the Arizona Corporation Commission, AR Utility's shareholders voted on May 13, 2005 in favor of a merger transaction that had the following effect: (1) the entire corporation of AR Utility was merged into Binary Mass and, as a result, AR Utility and its outstanding shares of stock now cease to exist; (2) Binary Mass is now conducting its operations under the name ARUSI, Inc. and has taken over ownership and

- 4 -

1  control of AR Utility's offices, employees, customers and other assets; and (3) Binary

2  Mass has issued 10 million shares of common voting stock to Defendant Reynoso, and

3  has authorized the issuance of only 500,000 shares of non-voting stock to Mrs. Reynoso

4  that Binary Mass can redeem at its discretion for $1 per share on terms unilaterally set by

5  Binary Mass.

6       19.  In reality, AR Utility never submitted the purported merger transaction

7  described in the Articles of Merger and Plan of Merger to a vote of AR Utility's

8  shareholders, and the shareholders of AR Utility never voted to approve the purported

9  merger transaction.

10       20.  Because the shareholders of AR Utility never voted to approve the Plan of

11  Merger, the Plan of Merger and the merger transaction contemplated therein are invalid

12  and ineffective.

13       21.  After improperly filing the Plan of Merger and Articles of Merger with the

14  Arizona Corporation Commission without approval from AR Utility's shareholders,

15  Defendants purported to terminate the employment of key AR Utility officers Ruben

16  Hinojos and Eduardo Alonzo and banned them from entering AR Utility's offices.

17       22.  In addition, when Mrs. Reynoso showed up to work, Defendant Reynoso

18  told her that she was banned from entering AR Utility's offices or speaking with any of

19  AR Utility's employees (including her three children who work for the company).

20       23.  Despite the fact that, according to Defendants, AR Utility has merged into

21  Binary Mass and ceases to exist as a corporation, Defendant Reynoso has informed

22  customers of AR Utility that AR Utility has simply changed its name to ARUSI, Inc. and

23  that nothing else has changed with respect to AR Utility's corporate structure or

24  operations.

25       24.  Since the filing of the Plan of Merger and Articles of Merger, defendants

26  have been using funds and bank accounts belonging to AR Utility to conduct the

27  supposed operations of Binary Mass and to pay Binary Mass' supposed employees,

28  payroll taxes and other obligations.

Snell & Wilmer

- 5 -

25.    Since the filing of the Plan of Merger and Articles of Merger, defendants have been utilizing financial records of AR Utility as a basis to secure financing for Binary Mass.

26.    Defendants have not informed AR Utility's insurance carrier or bonding company of the purported merger transaction described in the Plan of Merger that AR Utility and Binary Mass filed with the Arizona Corporation Commission.

27.    Upon information and belief, Binary Mass does not maintain any bank accounts, is not licensed with the Arizona Registrar of Contractors, is not bonded, and does not maintain any insurance. Nevertheless, according to Defendants, Binary Mass is now conducting all of the former business operations of AR Utility and servicing AR Utility's former customers.

28.    Upon information and belief, AR Utility never informed the Small Business Administration ("SBA") of the purported merger transaction, nor obtained the written approval of the SBA before proceeding to purportedly change the ownership structure of AR Utility, as expressly required under the terms of the SBA's 8(a) program. If Defendants were to effectuate the proposed merger transaction contemplated by the Plan of Merger without first obtaining the written approval of the SBA, the terms and conditions of the SBA's 8(a) program would result in the suspension or loss of AR Utility's certification under the SBA 8(a) program.

29.    Although Mrs. Reynoso has made formal demand for Defendants to withdraw the Plan of Merger and Articles of Merger that they improperly filed with the Arizona Corporation Commission and to refrain from taking any action in furtherance of the purported merger transaction contemplated in such documents, Defendants have failed and refused to do so. Instead, Defendants have continued to proceed as if the unlawful and invalid merger transaction has been effectuated and have utterly disregarded Mrs. Reynoso's rights as a shareholder of AR Utility.

Snell & Wilmer
L.L.P.
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

- 6 -

## Claims for Relief

### COUNT I
### Declaratory Judgment
### (All Defendants)

30.   Mrs. Reynoso realleges and incorporates by reference all prior paragraphs of this Verified Complaint as though fully set forth herein.

31.   Under A.R.S. § 12-1831, Mrs. Reynoso alleges a bona fide, actual, present and practical need for a declaration to determine the respective rights and obligations of the parties.

32.   The declaration sought by Mrs. Reynoso deals with a present, ascertained or ascertainable state of facts or a present justiciable controversy as to a state of facts between Mrs. Reynoso and Defendants.

33.   Under Arizona law, for a corporate merger transaction to take place: (1) the Board of Directors of each corporation must adopt a plan of merger that details the terms and conditions of the proposed merger and recommend the plan of merger to the corporation's shareholders; and (2) the corporation's shareholders must vote to approve the plan of merger.  A.R.S. §§ 10-1101(A), 10-1103(B).

34.   Under Arizona law, the shareholders of a corporation may vote only at a properly noticed shareholder meeting or through a written consent signed by all of the corporation's shareholders and delivered to the corporation.  A.R.S. § 10-704.

35.   AR Utility never notified each shareholder of AR Utility of a proposed shareholder meeting at which the Plan of Merger that AR Utility and Binary Mass filed with the Arizona Corporation Commission would be submitted to AR Utility's shareholders for approval, as required by A.R.S. § 10-1103(D).

36.   AR Utility never held a shareholder meeting to vote on the Plan of Merger that AR Utility and Binary Mass filed with the Arizona Corporation Commission.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

- 7 -

Snell & Wilmer
L.L.P.
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

37.    AR Utility's shareholders never signed a unanimous written consent voting their shares in favor of the Plan of Merger that AR Utility and Binary Mass filed with the Arizona Corporation Commission.

38.    Because AR Utility's shareholders never voted to approve the Plan of Merger that AR Utility and Binary Mass filed with the Arizona Corporation Commission on May 13, 2005, the Plan of Merger is invalid, ineffective and void *ab initio*.

39.    In direct violation of A.R.S. § 10-1105(A), AR Utility and Binary Mass filed the Plan of Merger and Articles of Merger with the Arizona Corporation Commission on May 13, 2005, although the shareholders of AR Utility never voted to approve the Plan of Merger.

40.    In addition, by causing AR Utility and Binary Mass to file the Plan of Merger and Articles of Merger with the Arizona Corporation Commission, and by purporting to merge AR Utility into Binary Mass, Defendant Reynoso violated A.R.S. § 25-315 and the Court's March 31, 2004 preliminary injunction, which enjoined Defendant Reynoso from transferring, selling or otherwise disposing of any community property assets without the written consent of Mrs. Reynoso or the permission of the Court.

41.    Based on the foregoing, Mrs. Reynoso is entitled to a judgment from the Court declaring that: (1) the merger transaction purportedly effected on May 13, 2005 between AR Utility and Binary Mass is unlawful and invalid; and (2) the Articles of Merger and Plan of Merger filed by AR Utility and Binary Mass with the Arizona Corporation on May 13, 2005 are invalid under Arizona law, void *ab initio*, and must be withdrawn by Defendants.

### COUNT II
### Breach of Fiduciary Duty
### (Defendant Reynoso)

42.    Mrs. Reynoso realleges and incorporates by reference all prior paragraphs of this Verified Complaint as though fully set forth herein.

- 8 -

Snell & Wilmer

43.    As the director of AR Utility, Defendant Reynoso owes a fiduciary duty to Mrs. Reynoso, as a shareholder, to act in good faith and in the best interests of the corporation and its shareholders.

44.    Until a final dissolution of their marriage is entered, Defendant Reynoso also owes a fiduciary duty to Mrs. Reynoso when dealing with their community property assets, including AR Utility.

45.    By engaging in the conduct described in this Verified Complaint, Defendant Reynoso grossly breached his fiduciary obligations to Mrs. Reynoso.

46.    As a direct and proximate cause of Defendant Reynoso's breach of fiduciary duties, Mrs. Reynoso is suffering and will continue to suffer irreparable harm unless and until an injunction restrains Defendants' actions. Mrs. Reynoso's damage cannot be adequately compensated solely through compensatory damages or other remedies at law, thereby requiring the Court to issue a temporary restraining order and a preliminary and permanent injunction, as prayed for in this Verified Complaint and in Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

47.    Defendant Reynoso's breach of his fiduciary duties owed to Mrs. Reynoso also entitles Mrs. Reynoso to recover money damages. Such damages are continuing and will be subject to proof at trial, but exceed the jurisdictional minimum of this Court.

## COUNT III
### Breach of Contract
### (Defendants Reynoso and AR Utility)

48.    Mrs. Reynoso realleges and incorporates by reference all prior paragraphs of this Verified Complaint as though fully set forth herein.

49.    On or about July 20, 2004, Mrs. Reynoso, Defendant Reynoso and AR Utility entered into a written Shareholders' Agreement. A true and correct copy of the Shareholders' Agreement is attached as Exhibit I to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

- 9 -

50. The Shareholders' Agreement expressly states:

No Shareholder shall Transfer any Shares, or any interest therein, now held or hereafter acquired by the Shareholder, except as expressly provided in this Agreement and in accordance with its terms and conditions . . .

51. The Shareholders' Agreement further provides:

Except in accordance with the terms and conditions of this Agreement, the Corporation shall not (a) cause or permit the Transfer of any Shares to be made on its books . . . **without the prior written consent of all of the Shareholders** and the Third Party Beneficiaries [defined as the 3 children of Mr. and Mrs. Reynoso].

52. Under Article III of the Shareholders' Agreement, before a shareholder may transfer any shares of AR Utility to a third party, he or she must first offer in writing to sell such shares on a discounted basis (85% of the purchase price offered by the third party) to: (1) AR Utility; (2) the non-selling shareholders; and (3) the three children of Mrs. Reynoso and Defendant Reynoso, each of whom has 30 days to decide whether to exercise such purchase option.

53. Defendant Reynoso breached the Shareholders' Agreement by, among other things, filing the Plan of Merger and Articles of Merger with the Arizona Corporation Commission and purporting to transfer the shares of AR Utility to Binary Mass without first complying with the provisions of the Shareholders' Agreement, including the requirement that he first offer in writing to transfer such shares to AR Utility, Mrs. Reynoso, and his three children.

54. Defendant Reynoso also caused AR Utility to breach the Shareholders' Agreement by purporting to cause the transfer of AR Utility stock on AR Utility's books without first obtaining the written consent of Mrs. Reynoso.

55. As a direct and proximate cause of Defendant Reynoso's and AR Utility's breach of contract, Mrs. Reynoso is suffering and will continue to suffer irreparable harm unless and until an injunction restrains Defendants' actions. Mrs. Reynoso's damage cannot be adequately compensated solely through compensatory damages or other

Snell & Wilmer

One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

- 10 -

1  remedies at law, thereby requiring the Court to issue a temporary restraining order and a

2  preliminary and permanent injunction, as prayed for in this Verified Complaint and in

3  Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

4      56.    Defendants' breach of the Shareholders' Agreement also entitles Mrs.

5  Reynoso to recover money damages. Such damages are continuing and will be subject to

6  proof at trial, but exceed the jurisdictional minimum of this Court.

### COUNT IV
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Defendants Reynoso and AR Utility)

9      57.    Plaintiff realleges and incorporates by reference all prior paragraphs of this

10  Verified Complaint as though fully set forth herein.

11     58.    A covenant of good faith and fair dealing is implied as a matter of law in

12  the Shareholders' Agreement.

13     59.    By engaging in the above-described conduct, Defendant Reynoso has

14  materially breached and caused AR Utility to breach the covenant of good faith and fair

15  dealing implied in the Shareholders' Agreement.

16     60.    As a direct and proximate result, Mrs. Reynoso is suffering and will

17  continue to suffer irreparable harm unless and until an injunction restrains

18  Defendants' actions. Mrs. Reynoso's damage cannot be adequately compensated

19  solely through compensatory damages or other remedies at law, thereby requiring

20  the Court to issue a temporary restraining order and a preliminary and permanent

21  injunction, as prayed for in this Verified Complaint and in Plaintiff's Motion for

22  Temporary Restraining Order and Preliminary Injunction.

23     61.    Defendants' breach of the implied covenant of good faith and fair

24  dealing also entitles Mrs. Reynoso to recover money damages. Such damages are

25  continuing and will be subject to proof at trial, but exceed the jurisdictional

26  minimum of this Court.

27

28

- 11 -

## COUNT V
### Intentional Interference with Contract
### (Defendant Binary Mass)

62.     Plaintiff realleges and incorporates by reference all prior paragraphs of this Verified Complaint as though fully set forth herein.

63.     Defendant Binary Mass was aware of the contractual relationship among AR Utility's shareholders, as well as the contractual relationships and business expectancies between AR Utility and its customers and potential customers.

64.     With full knowledge of such contractual relationships and business expectancies, Binary Mass intentionally and wrongfully interfered with such relationships by engaging in the conduct and activities described herein.

65.     As a direct and proximate result, Mrs. Reynoso is suffering and will continue to suffer irreparable harm unless and until an injunction restrains defendants' actions. Mrs. Reynoso's damage cannot be adequately compensated solely through compensatory damages or other remedies at law, thereby requiring the Court to issue a temporary restraining order and a preliminary and permanent injunction, as prayed for in this Verified Complaint and in Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

66.     Binary Mass' intentional interference with contract also entitles Mrs. Reynoso to recover money damages. Such damages are continuing and will be subject to proof at trial, but exceed the jurisdictional minimum of this Court.

### Prayer for Relief

WHEREFORE, plaintiff Cynthia Reynoso prays that this Court enter judgment in her favor and against defendants as follows:

A.     For a temporary restraining order and a preliminary and permanent injunction prohibiting defendants Alejandro Reynoso, AR Utility, and Binary Mass, their agents, employees, affiliates, and all those acting in concert with them, from:

- 12 -

1       1.     Taking any action in furtherance of the purported merger transaction

2  described in the Plan of Merger and Articles of Merger documents that AR Utility and

3  Binary Mass filed with the Arizona Corporation Commission on May 13, 2005;

4       2.     Changing or altering the ownership status of AR Utility from that

5  immediately prior to May 13, 2005; transferring, selling, redeeming or canceling any

6  outstanding shares of AR Utility stock; and issuing any new shares or classes of shares of

7  AR Utility stock;

8       3.     Changing or altering the corporate structure of AR Utility from that

9  immediately prior to May 13, 2005, including the firing or hiring of any officers or

10  employees of AR Utility; and

11       4.     Implementing any corporate actions or resolutions affecting AR

12  Utility and its business, customers, operations and assets, beyond those necessary to run

13  the daily operations of the company

14     B.    A declaratory judgment that:

15       1.     The merger transaction purportedly effected on May 13, 2005

16  between AR Utility Binary Mass was not validly approved by AR Utility's shareholders

17  and is invalid under Arizona law and void *ab initio*; and

18       2.     The Articles of Merger and Plan of Merger documents filed by AR

19  Utility and Binary Mass with the Arizona Corporation Commission on May 13, 2005 are

20  invalid under Arizona law and void *ab initio*;

21       3.     A temporary restraining preventing defendants and their agents from

22  taking any action in furtherance of the invalid merger transaction, altering or changing the

23  ownership status or corporate structure of AR Utility from that prior to May 13, 2005, and

24  taking any corporate actions affecting AR Utility beyond those necessary to run the daily

25  operations of the company.

26     C.    For compensatory and consequential damages in an amount to be proved at

27  trial;

28

- 13 -

D.     For costs and attorneys' fees, pursuant to A.R.S. §§ 12-341 and 12-341.01(A);

E.     For pre-judgment and post-judgment interest, calculated at the maximum rate allowed by law; and

F.     For such other and further relief as the Court deems just and appropriate.

DATED this **26th** day of May, 2005.

SNELL & WILMER L.L.P.

By _____
    Robert M. Kort
    Richard G. Erickson
    One Arizona Center
    400 East Van Buren Street
    Phoenix, Arizona 85004-2202
    Attorneys for Plaintiff Cynthia Reynoso

- 14 -

## VERIFICATION

1
2
3     I, Cynthia Reynoso, declare under penalty of perjury:

4     I am the plaintiff in this matter; I have read the foregoing Verified Complaint and

5  know the contents thereof and that the things therein set forth are true and accurate to the

6  best of my information and belief.

7     DATED this ⟶⟶ day of May, 2005.

8
9
10                                    _Cynthia    Reynoso_
                                        Cynthia Reynoso
11  1679482.1

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  Robert M. Kort (#016602)
   Richard G. Erickson (#019066)
2  **SNELL & WILMER L.L.P.**
   One Arizona Center
3  400 East Van Buren Street
   Phoenix, Arizona 85004-2202
4  Telephone: (602) 382-6000
   Facsimile: (602) 382-6070
5  Attorneys for Plaintiff Cynthia Reynoso

6

7          **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8              **IN AND FOR THE COUNTY OF MARICOPA**

9
   CYNTHIA REYNOSO, an Arizona          No.
10 resident,                                    CV2005-008557
11              Plaintiff,
12 v.                                    **TEMPORARY RESTRAINING
                                         ORDER AND NOTICE OF
13 ALEJANDRO REYNOSO, an Arizona         HEARING ON PRELIMINARY
   resident; AR UTILITY SPECIALISTS,     INJUNCTION**
13 INC., an Arizona corporation; and
   ARUSI, INC. f/k/a/ BINARY MASS
14 PROPULSION SYSTEMS, INC., an
   Arizona corporation,
15
                Defendants.
16

17         The Court, having considered Plaintiff's Verified Complaint and Motion for

18 Temporary Restraining Order and Preliminary Injunction, which plaintiff's counsel

19 certified was provided to defendants' counsel, the Court hereby makes the following

20 findings of fact:

21         1.     Plaintiff has shown a likelihood of success on the merits of her claims

22 against Defendants;

23         2.     Plaintiff will suffer immediate and irreparable injury, loss and damage

24 unless this Order is entered;

25         3.     The balance of hardships tips in favor of Plaintiff; and

26         4.     Public policy favors the relief requested in this Order.

27

28

In consideration of the foregoing, and based on the Verified Complaint and the Memorandum of Points and Authorities submitted in support of Plaintiff's Motion for Temporary Restraining Order, along with the supporting exhibits.

IT IS HEREBY ORDERED as follows:

Defendants Alejandro Reynoso, AR Utility Specialists, Inc. ("AR Utility"), and ARUSI, Inc. f/k/a/ Binary Mass Propulsion Systems, Inc. ("Binary Mass"), their agents, employees, affiliates, and all those acting in concert with them are enjoined and prohibited from:

1.    Taking any action in furtherance of the purported merger transaction described in the Plan of Merger and Articles of Merger documents that AR Utility and Binary Mass filed with the Arizona Corporation Commission on May 13, 2005;

2.    Changing or altering the ownership status of AR Utility from that immediately prior to May 13, 2005; transferring, selling, redeeming or canceling any outstanding shares of AR Utility stock; or issuing any new shares or classes of shares of AR Utility stock;

3.    Changing or altering the corporate structure of AR Utility from that immediately prior to May 13, 2005, including the firing or hiring of any officers or employees of AR Utility; and

4.    Implementing any corporate actions or resolutions affecting AR Utility and its business, customers, operations and assets, beyond those necessary to run the daily operations of the company.

IT IS FURTHER ORDERED that Defendants shall take all necessary actions to withdraw the Articles of Merger and Plan of Merger documents that AR Utility and Binary Mass filed with the Arizona Corporation Commission on May 13, 2005 and any amendments or modifications to such documents.

- 2 -

1    IT IS FURTHER ORDERED that a hearing on plaintiff's Application for

2    Preliminary Injunction will be held on _June 10_, 2005 at _9:30_ a.m./p.m.

3    DATED this _27th_ day of May, 2005 at _10:45_ o'clock a.m./p.m.

4                                    HONORABLE PETER C. REINSTEIN

5                                    JUDGE OF THE MARICOPA COUNTY
                                     SUPERIOR COURT
6    1679856.1

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

COPY

JUN 0 6 2005

MICHAEL K. JEANES CLERK
V. CALHOON
DEPUTY CLERK

1   Peter Strojnik, 6464
   THE LAW FIRM OF PETER STROJNIK
2   3030 North Central Avenue, Suite 1401
   Phoenix, Arizona 85012
3   Telephone: 602-297-3019
   Facsimile: 602-297-3176
4   e-mail: Strojnik@aol.com; lawyer@strojnik.com
   Attorney for Defendants
5

6        IN THE IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

7            IN AND FOR THE COUNTY OF MARICOPA

8

9

| | |
|---|---|
| | NO. CV 2005-008557 |
| 10 CYNTHIA REYNOSO, an Arizona Resident | **VERIFIED COMPULSORY COUNTERCLAIM** |
| 11            Plaintiff, | (AR Utility Specialists, Inc.) |
| 12      vs. | **Embezzlement and Conversion** |
| 13 ALEJANDRO REYNOSO, an Arizona resident; AR UTILITY SPECIALISTS, | **Conspiracy** |
| 14 INC.; ARUSI, Inc., an Arizona Corporation, f/k/a BINARY MASS | **Breach of Fiduciary Duty** |
| 15 PROPULSION SYSTEMS, INC. | Pattern of Unlawful Activity in Violation of |
| 16         Defendants. | State Statute A.R.S. 13-2314.04 |
| 17 | **Injunction** |
| 18 AR UTILITY SPECIALISTS, INC. an | |
| 19 Arizona Corporation, | |
| 20         Counterplaintiff, | |
| 21      Vs. | |
| 22 CYNTHIA REYNOSO, an Arizona | |
| 23 Resident, | |
| 24         Counterdefendant. | |
| 25 | |

Counterplaintiff AR Utility Specialists, Inc., alleges as follows:

1. Counterplaintiff AR Utility Specialists, Inc. ("Company") was, at times relevant hereto, an Arizona Corporation duly authorized and doing business in Maricopa County, State of Arizona.

2. Counterdefendant Cynthia Reynoso ("C. Reynoso") was, at times relevant hereto, an employee and an officer of the Company.

3. At all times relevant hereto, C. Reynoso and her husband ("Husband") were the sole shareholders of the Company stock. C. Reynoso is the minority shareholder, Husband is the majority shareholder.

4. C. Reynoso caused the events that form the subject matter of this Counterclaim to occur in Maricopa County, State of Arizona.

## ALLEGATIONS COMMON TO ALL COUNTS

5. In or about late 2003, C. Reynoso befriended Company controller, one Eduardo Alonzo ("Alonzo"). At or about this time, Alonzo related to C. Reynoso disparaging information regarding her Husband.

6. As a result of the disparaging information regarding her Husband, C. Reynoso became enraged and decided to file for a dissolution of marriage.

7. In anticipation of filing a Petition For Dissolution of Marriage, C. Reynoso developed a scheme and artifice by which she would steal and embezzle cash from the Company.

-2-

8. Pursuant to her scheme and artifice described above, C. Reynoso stole and embezzled from the Company cash as follows:

   a. On October 28, 2005, C. Reynoso took and embezzled from the Company $8,000.00 (Exhibit "A");

   b. On November 18, 2003, C. Reynoso took and embezzled from the Company $10,000.00 (Exhibit "B");

   c. On December 1, 2003, C. Reynoso took and embezzled from the Company $7,500.00 (Exhibit "C");

   d. On December 29, 2003, C. Reynoso took and embezzled from the Company $6,000.00 (Exhibit "D");

   e. On March 11, 2004, C. Reynoso took and embezzled from the Company $2,677.00 (Exhibit "E").

9. On or about March 31, 2004, C. Reynoso filed a Petition for Dissolution Of Marriage against her Husband under cause number FN2004-001375 (the "Divorce Action").

10. As a part of the filing of the Divorce Action, the Court issued a Preliminary Injunction which stated, in relevant part:

   **1(a). RESTRICTIONS ON PROPERTY OF THE MARRIAGE.** That both parties are enjoined from transferring, encumbering, concealing, selling or otherwise disposing of any of the joint, common or community property of the parties except if related to the usual course of business, the necessities of life or court fees and reasonable attorney fees associated with an action filed under this article, without the written consent of the parties or the permission of the court.

· 3

11. Thereafter, pursuant to her scheme and artifice described above, C. Reynoso stole and embezzled from the Company additional cash as follows:

    a. April 8, 2004, C. Reynoso took and embezzled from the Company $7,718.40. (Exhibit "F"). The taking of this check was not in the ordinary course of business, nor was it authorized by the Company. The taking of the check violated the Preliminary Injunction in the Divorce Proceeding and C. Reynoso's duty not to convert Company assets for her own use.

    b. On May 14, 2004, C. Reynoso took and embezzled from the Company $7,000.00. (Exhibit "G") The taking of this check was not in the ordinary course of business, nor was it authorized by the Company. The taking of the check violated the Preliminary Injunction in the Divorce Proceeding and C. Reynoso's duty not to convert Company assets for her own use.

    c. On June 10, 2004, C. Reynoso took and embezzled from the Company $3,500.00. (Exhibit "H") The taking of this check was not in the ordinary course of business, nor was it authorized by the Company. The taking of the check violated the Preliminary Injunction in the Divorce Proceeding and C. Reynoso's duty not to convert Company assets for her own use.

    d. On June 15, 2004, C. Reynoso took and embezzled from the Company $2,800.00. (Exhibit "I") The taking of this check was not in the ordinary course of business, nor was it authorized by the Company. The taking of the

- 4 -

check violated the Preliminary Injunction in the Divorce Proceeding and C. Reynoso's duty not to convert Company assets for her own use.

e.  On July 6, 2004, C. Reynoso took and embezzled from the Company $5,700.00. (Exhibit "J") The taking of this check was not in the ordinary course of business, nor was it authorized by the Company. The taking of the check violated the Preliminary Injunction in the Divorce Proceeding and C. Reynoso's duty not to convert Company assets for her own use.

f.  On July 16, 2004, C. Reynoso took and embezzled from the Company $15,000.00. (Exhibit "K") The taking of this check was not in the ordinary course of business, nor was it authorized by the Company. The taking of the check violated the Preliminary Injunction in the Divorce Proceeding and C. Reynoso's duty not to convert Company assets for her own use.

g.  On September 7, 2004, C. Reynoso took and embezzled from the Company $8,000.00. (Exhibit "L") The taking of this check was not in the ordinary course of business, nor was it authorized by the Company. The taking of the check violated the Preliminary Injunction in the Divorce Proceeding and C. Reynoso's duty not to convert Company assets for her own use.

h.  On October 22, 2004, C. Reynoso took and embezzled from the Company $5,000.00. (Exhibit "M") The taking of this check was not in the ordinary course of business, nor was it authorized by the Company. The taking of the

-5-

check violated the Preliminary Injunction in the Divorce Proceeding and C. Reynoso's duty not to convert Company assets for her own use.

i. On December 1, 2004, C. Reynoso took and embezzled from the Company $6,000.00. (Exhibit "N") The taking of this check was not in the ordinary course of business, nor was it authorized by the Company. The taking of the check violated the Preliminary Injunction in the Divorce Proceeding and C. Reynoso's duty not to convert Company assets for her own use.

j. On April 22, 2005, C. Reynoso took and embezzled from the Company $3,500.00. (Exhibit "O") The taking of this check was not in the ordinary course of business, nor was it authorized by the Company. The taking of the check violated the Preliminary Injunction in the Divorce Proceeding and C. Reynoso's duty not to convert Company assets for her own use.

12. C. Reynoso took, embezzled and improperly converted the following checks in the amounts as indicated:

| DATE | CHECK NO | AMOUNT TAKEN |
|---|---|---|
| 10/28/03 | 25607 | $8,000.00 |
| 11/18/03 | 25724 | $10,000.00 |
| 12/01/03 | 25756 | $7,500.00 |
| 12-19-03 | 25966 | $6,000.00 |
| 03-11-04 | 26381 | $2,667.00 |
| 04-08-04 | 26510 | $7,718.40 |
| 05-14-04 | 26674 | $7,000.00 |
| 06-10-04 | 26802 | $3,500.00 |
| 06-15-04 | 26819 | $2,800.00 |

-6-

| 07-06-04 | 26927 | $5,700.00 |
| 07-16-04 | 26974 | $15,000.00 |
| 09-07-04 | 27238 | $8,000.00 |
| 10-22-04 | 27435 | $5,000.00 |
| 12-01-04 | 27575 | $6,000.00 |
| 04-22-05 | 28105 | $3,500.00 |
| | **TOTAL** | **$98,385.40** |

13. C. Reynoso's acts of embezzlement and conversion described above were accomplished through agreement to commit these acts with Alonzo.

14. In addition to the foregoing, C. Reynoso individually, and by aiding and abetting Alonzo, and through a conspiracy to commit unlawful acts with Alonzo, either individually or through her co-conspirator Alonzo, committed the following acts:

a. Surreptitiously embezzle Company funds for Alonzo's own personal use;

b. Surreptitiously embezzle Company funds for the use by Cynthia Reynoso;

c. Surreptitiously convert Company funds and opportunities;

d. Cover up the embezzlement through accounting practices that failed to comply with the generally accepted accounting practices;

e. Surreptitiously caused the Company to make payments to a Country of Mexico corporation, Golden Anvil, SA, in which they held stock;

f. Cover up the embezzlement and the failure to comply with generally accepted accounting practices by knowingly and intentionally making false statements of fact to the officer(s) and director(s) of the Company;

-7-

g. Surreptitiously make investments in Mexican gold ventures, including the La

Plancha Mine and the Colomo Mine.

## COUNT ONE
### (Embezzlement And Conversion)

15. Counterplaintiff realleges all allegations heretofore set forth.

16. C. Reynoso embezzled and converted the following sums of money from the

Company:

| DATE | CHECK NO | AMOUNT TAKEN |
|---|---|---|
| 10/28/03 | 25607 | $8,000.00 |
| 11/18/03 | 25724 | $10,000.00 |
| 12/01/03 | 25756 | $7,500.00 |
| 12-19-03 | 25966 | $6,000.00 |
| 03-11-04 | 26381 | $2,667.00 |
| 04-08-04 | 26510 | $7,718.40 |
| 05-14-04 | 26674 | $7,000.00 |
| 06-10-04 | 26802 | $3,500.00 |
| 06-15-04 | 26819 | $2,800.00 |
| 07-06-04 | 26927 | $5,700.00 |
| 07-16-04 | 26974 | $15,000.00 |
| 09-07-04 | 27238 | $8,000.00 |
| 10-22-04 | 27435 | $5,000.00 |
| 12-01-04 | 27575 | $6,000.00 |
| 04-22-05 | 28105 | $3,500.00 |
| | TOTAL | $98,385.40 |

17. C. Reynoso damaged the Company in the sum of $98,385.40, and otherwise to be

determined at the time of trial.

-8-

18.C. Reynoso further damaged the Company by damaging the Company cash position to such degree that the Company was not, on May 10, 2005, able make payments to its creditors as the payments became due.

19.C. Reynoso further damaged the Company by damaging the Company cash position to such degree that the Company was not, on May 10, 2005, able make payroll.

20. Counterdefendant's actions in converting and embezzling Company funds was known to be wrongful to C. Reynoso at the time she was committing these acts of embezzlement.

21.C. Reynoso committed these acts of embezzlement with the intent to vent her anger and intentionally damage the Company.

22.C. Reynoso committed the acts of embezzlement for spite and with ill will.

23.C. Reynoso's actions were committed with "evil heart" as that term is defined in *stare decisis*, entitling Counterplaintiff to an award of punitive damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for relief as follows:

A. For liquidated damages in the sum of $98,385.40;

B. For additional damages as proven at the time of trial;

C. For pre-judgment and post-judgment interest thereon;

D. For punitive damages in the minimum amount of $500,000.00;

E. For costs and attorney's fees pursuant to A.R.S. § 12-341.01

-5-

F.  For such other and further relief as the Court may deem just and proper.

## COUNT TWO
### (Conspiracy)

24. Counterplaintiff realleges all allegations heretofore set forth as if fully restated herein.

25. c. Reynoso and Alonzo entered an agreement and understanding that they would take, steal and embezzle from the company as much cash as they could.

26. Pursuant to the conspiratorial agreement set forth above, C. Reynoso and Alonzo accomplished the following acts:

  a.  On October 28, 2005, C. Reynoso took and embezzled from the Company $8,000.00 (Exhibit "A");

  b.  On November 18, 2003, C. Reynoso took and embezzled from the Company $10,000.00 (Exhibit "B");

  c.  On December 1, 2003, C. Reynoso took and embezzled from the Company $7,500.00 (Exhibit "C");

  d.  On December 29, 2003, C. Reynoso took and embezzled from the Company $6,000.00 (Exhibit "D");

  e.  On March 11, 2004, C. Reynoso took and embezzled from the Company $2,677.00 (Exhibit "E").

  f.  April 8, 2004, C. Reynoso took and embezzled from the Company $7,718.40 (Exhibit "F").

-10-

g. On May 14, 2004, C. Reynoso took and embezzled from the Company $7,000.00. (Exhibit "G")

h. On June 10, 2004, C. Reynoso took and embezzled from the Company $3,500.00. (Exhibit "H")

i. On June 15, 2004, C. Reynoso took and embezzled from the Company $2,800.00. (Exhibit "I")

j. On July 6, 2004, C. Reynoso took and embezzled from the Company $5,700.00. (Exhibit "J")

k. On July 16, 2004, C. Reynoso took and embezzled from the Company $15,000.00. (Exhibit "K")

l. On September 7, 2004, C. Reynoso took and embezzled from the Company $8,000.00. (Exhibit "L")

m. On October 22, 2004, C. Reynoso took and embezzled from the Company $5,000.00. (Exhibit "M")

n. On December 1, 2004, C. Reynoso took and embezzled from the Company $6,000.00. (Exhibit "N")

o. On April 22, 2005, C. Reynoso took and embezzled from the Company $3,500.00. (Exhibit "O")

p. Surreptitiously embezzled Company funds for Alonzo's own personal use;

-:.1

q. Covered up the embezzlement through accounting practices that failed to comply with the generally accepted accounting practices;

r. Surreptitiously caused the Company to make payments to a Country of Mexico corporation, Golden Anvil, SA, in which Alonzo held stock;

s. Cover up the embezzlement and the failure to comply with generally accepted accounting practices by knowingly and intentionally making false statements of fact to the officer(s) and director(s) of the Company;

t. Surreptitiously making investments in Mexican gold ventures, including the La Plancha Mine and the Colomo Mine.

WHEREFORE, Plaintiff prays for relief as follows:

A. For damages in an amount no less than $750,000.00;

B. For interest at the highest legal rate;

C. For costs and attorney's fees insofar as this matter arises out of contract, pursuant to ARS 12-341.01;

D. For punitive damages in an amount no less than $500,000.00

E. For such other and further relief as may be appropriate.

**COUNT THREE**
(Breach of Fiduciary Duty)

27. Counterplaintiff realleges all allegations heretofore set forth as if fully restated herein.

28. C. Reynoso was an officer of the Company and under contract to provide employment services to the Company

-12-

29. C. Reynoso was Company's fiduciary, owing the Company the highest duty of utmost good faith.

30. C. Reynoso breached her fiduciary duty to the Company by entering into a conspiracy with Alonzo and by converting the Company funds as hereinabove specified.

31. When the breach was discovered by Company, C. Reynoso was fired.

32. The Company was damaged by C. Reynoso's breach in an amount to be proven at trial, but in no event less than $750,000.00

33. This matter arises in contract, entitling Plaintiff to an award of attorney's fees pursuant to ARS § 12-341.01.

WHEREFORE, Plaintiff prays for relief as follows:

A. For damages in an amount no less than $750,000.00;

B. For interest at the highest legal rate;

C. For costs and attorney's fees insofar as this matter arises out of contract, pursuant to ARS 12-341.01;

D. For punitive damages in an amount no less than $500,000.00

E. For such other and further relief as may be appropriate.

## COUNT FOUR
Pattern of Unlawful Activity in Violation of State Statute
A.R.S. 13-2314.04

34. Counterplaintiffs reallege all allegations heretofore set forth as if fully restated herein.

-23-

35. Counterdefendant's *modus operandi* as set forth above discloses a course of illegal conduct with common external organizing principle including the scheme and artifice to defraud, embezzlement and theft as more fully described above.

36. The illegal acts committed by C. Reynoso with respect to the Company are related in that they have the same or similar purposes, results, participants, victims or methods of commission and are otherwise interrelated by distinguishing characteristics, to wit: they involved embezzlement of Company funds in several acts, each of which represents a separate illegal act.

37. The misconduct committed by C. Reynoso demonstrates a series of related predicate acts involving the Company extending over a substantial period of time.

38. C. Reynoso devised and intended to devise a scheme or artifice to defraud, or for obtaining money, property and/or services by means of false or fraudulent pretenses, representations, or promises, as more fully described above.

39. C. Reynoso's *modus operandi* discloses a course of illegal conduct with common external organizing principle including the method and manner of embezzlement disclosed above.

40. In particular:

    a. On October 28, 2005, C. Reynoso took and embezzled from the Company $8,000.00 (Exhibit "A");

- 14 -

b. On November 18, 2003, C. Reynoso took and embezzled from the Company $10,000.00 (Exhibit "B");

c. On December 1, 2003, C. Reynoso took and embezzled from the Company $7,500.00 (Exhibit "C");

d. On December 29, 2003, C. Reynoso took and embezzled from the Company $6,000.00 (Exhibit "D");

e. On March 11, 2004, C. Reynoso took and embezzled from the Company $2,677.00 (Exhibit "E").

f. April 8, 2004, C. Reynoso took and embezzled from the Company $7,718.40. (Exhibit "F").

g. On May 14, 2004, C. Reynoso took and embezzled from the Company $7,000.00. (Exhibit "G")

h. On June 10, 2004, C. Reynoso took and embezzled from the Company $3,500.00. (Exhibit "H")

i. On June 15, 2004, C. Reynoso took and embezzled from the Company $2,800.00. (Exhibit "I")

j. On July 6, 2004, C. Reynoso took and embezzled from the Company $5,700.00. (Exhibit "J")

k. On July 16, 2004, C. Reynoso took and embezzled from the Company $15,000.00. (Exhibit "K")

-15-

l. On September 7, 2004, C. Reynoso took and embezzled from the Company $8,000.00. (Exhibit "L")

m. On October 22, 2004, C. Reynoso took and embezzled from the Company $5,000.00. (Exhibit "M")

n. On December 1, 2004, C. Reynoso took and embezzled from the Company $6,000.00. (Exhibit "N")

o. On April 22, 2005, C. Reynoso took and embezzled from the Company $3,500.00. (Exhibit "O")

p. Surreptitiously embezzled Company funds for Alonzo's own personal use;

q. Covered up the embezzlement through accounting practices that failed to comply with the generally accepted accounting practices;

r. Surreptitiously caused the Company to make payments to a Country of Mexico corporation, Golden Anvil, SA, in which Alonzo held stock;

s. Cover up the embezzlement and the failure to comply with generally accepted accounting practices by knowingly and intentionally making false statements of fact to the officer(s) and director(s) of the Company;

t. Surreptitiously making investments in Mexican gold ventures, including the La Plancha Mine and the Colomo Mine.

41. C. Reynoso committed a scheme and artifice to defraud the Company through the commission of the acts hereinabove set forth.

-16-

42. The Company has been damaged to its property and services as a direct and consequential result of C. Reynoso's commission of the schemes and artifices alleged above.

43. C. Reynoso's illegal, unlawful and fraudulent conduct is indictable under the provisions of both Title 13 of the Arizona Criminal Code as follows:

     a. A.R.S. §13-1801 *et seq.* - Theft;

     b. A.R.S. §13-2310 – Fraudulent Schemes And Artifices;

44. Company has been damaged by C. Reynoso's illegal acts in the sum to be proven at trial, but in no event less than $750,000.00.

45. C. Reynoso committed the above described acts with the intent to vent her anger and intentionally damage the Company.

46. C. Reynoso committed the acts of embezzlement for spite and with ill will.

WHEREFORE, the Company prays for relief as follows:

A. For damages in an amount equal to compensate the Company for the damages caused by C. Reynoso's pattern of unlawful activities, but in no event less than $500,000.00;

B. For trebling said damages pursuant to statute to $1,500,000.00;

C. For punitive damages in the amount of no less than $500,000.00

D. Enjoining C. Reynoso from committing further unlawful acts in violation of statute;

-17-

E. Granting such other and further relief as may be appropriate.

RESPECTFULLY SUBMITTED this 6th day of June, 2005.

THE LAW FIRM OF
**PETER STROJNIK**

_____
By: Peter Strojnik
Attorney for the Defendants

## VERIFICATION

Raymond Cabreja, President of Plaintiff Company, verifies that he has read the foregoing and that the same it true and correct to the best of his knowledge, information and belief

DATED this 6th day of June, 2005.

_____
Raymond Cabreja

The original of the foregoing filed this 6th day of June, 2005,
With the Clerk of the Maricopa County Superior Court
201 West Jefferson
Phoenix, Arizona 85003

Copy hand delivered to:

The Honorable Jonathan Schwartz
Judge of the Superior Court
201 West Jefferson
Phoenix, Arizona 85003

And mailed to:

Robert M. Kort, Esq.
SNELL & WILMER

-18-

1    E. Granting such other and further relief as may be appropriate.

2    RESPECTFULLY SUBMITTED this 6th day of June, 2005.

3

4              THE LAW FIRM OF
              **PETER STROJNIK**

5

6              By: Peter Strojnik

7              Attorney for the Defendants

8               VERIFICATION

9

10       Raymond Cabreja, President of Plaintiff Company, verifies that he has read the foregoing and that the same it true and correct to the best of his knowledge, information

11 and belief.

12 DATED this 6th day of June, 2005.

13

14 Raymond Cabreja

15

16 The original of the foregoing filed this 6th day of June, 2005,
    With the Clerk of the Maricopa County Superior Court

17 201 West Jefferson

18 Phoenix, Arizona 85003

19 Copy hand delivered to:

20 The Honorable Jonathan Schwartz

21 Judge of the Superior Court
    201 West Jefferson

22 Phoenix, Arizona 85003

23 And mailed to:

24

25 Robert M. Kort, Esq.
    SNELL & WILMER

-18-

1 One Arizona Center
2 Phoenix, Arizona 85004-2202
 *and by fax 602-382-6070*
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

-19-



For Deposit Only
acct. # 2640-1187

CREDITED TO ACCOUNT OF
C. Reynoso
WITHIN-NAMED PAYEE
FOR DEPOSIT ONLY
BANK ONE, NA

ARIFILITY SPECIALISTS, INC.
clan ELMO GROUP
P.O. BOX 30958
PHOENIX, AZ 85020-0958
(602) 431-2145 / FAX (602) 431-2165

PAY
TO THE
ORDER
OF

CYNTHIA REYNOSO
4305 N. 125TH DR.
LITCHFIELD PARK, AZ 85340

THE SUM OF EIGHT THOUSAND DOLLARS

10/28/2003

AMOUNT
*8,000.00

25607

025607

EXHIBIT A

PAY
TO THE
ORDER
OF

THE SUM OF TEN THOUSAND DOLLARS

CYNTHIA REYNOSO
4300 N. 120TH DR.
LITCHFIELD PARK, AZ 85340

Official Check No: 697400607
Issued To The Within Payee
By
BANK ONE, NA
Litchfield & McDowell  B-3451
Goodyear, AZ
Official Check Listed Above
Received By

2 697400607

*10,000.00*

25724

025724

EXHIBIT B

A R UTILITY SPECIALISTS, INC.

PAY TO THE ORDER OF

CYNTHIA REYNOSO
4305 N. 129TH DR.
LITCHFIELD PARK, AZ 85340

THE SUM OF SEVEN THOUSAND FIVE HUNDRED DOLLARS

For Deposit Only
Acct# 2640-1187

12/01/2003

AMOUNT
26756

025756

EXHIBIT C

CYNTHIA REYNOSO
4305 N. 129TH DR.
LITCHFIELD PARK, AZ 85340

THE SUM OF SIX THOUSAND DOLLARS

12/29/2003

25966

6,000.00

025966

EXHIBIT D

CYNTHIA REYNOSO
4905 N. 189TH DR.
LITCHFIELD PARK, AZ 85340

THE SUM OF TWO THOUSAND SIX HUNDRED SEVENTY SEVEN DOLLARS

03/11/2004

AMOUNT    2677.00

026381

*Cynthia Reynoso*

EXHIBIT E

A W BURLEY SPECIALISTS, INC.

THE SUM OF SEVEN THOUSAND SEVEN HUNDRED EIGHTEEN DOLLARS AND 40 CENTS

CYNTHIA REYNOSO
4305 N. 120TH DR.
LITCHFIELD PARK, AZ 85340

DATE
04/08/2004

AMOUNT
**7,718.40

026510

20510

Cynthia Reynoso

0004    39455

EXHIBIT F

A DISABILITY SPECIALISTS, INC.
dba FLAM GROUP
P.O. BOX 70852
PHOENIX, AZ 85080-0852

CYNTHIA REYNOSO
4305 N. 129TH DR.
LITCHFIELD PARK, AZ 85340

THE SUM OF SEVEN THOUSAND DOLLARS

PAY
TO THE
ORDER
OF

Official Check No. 2-79(6 5880
Issued To The Within Payee
By

BANK ONE, NA
Litchfield McDowell P.100
Goodyear, AZ

Official Check Listed Above
Received By

05/14/2004

DATE

*******7,000.00

AMOUNT

25674

026674

EXHIBIT G

A & R UTILITY SPECIALISTS, INC.

PAY TO THE ORDER OF

CYNTHIA REYNOSO
4909 N. 129TH DR.
LITCHFIELD PARK, AZ 85340

THE SUM OF THREE THOUSAND FIVE HUNDRED DOLLARS

DATE 06/10/2304

AMOUNT $3,500.00

026802

EXHIBIT H

A HUTTER SPECIALISTS, INC.

CYNTHIA REYNOSO
14005 N 129TH DR.
LITCHFIELD PARK, AZ 85340

THE SUM OF TWO THOUSAND EIGHT HUNDRED DOLLARS

06/15/2004

2,800.00

026819

EXHIBIT I

AZ UTILITY SPECIALISTS, INC.

CYNTHIA REYNOSO
4305 N. 129TH CR.
LITCHFIELD PARK, AZ 85340

THE SUM OF FIVE THOUSAND SEVEN HUNDRED DOLLARS

07/06/2004

**$5,700.00**

26927

026927

EXHIBIT J



EXHIBIT K



A STROJNIK SPECIALISTS, INC.
dba BUD GROUP
P.O. BOX 26060
PHOENIX, AZ 85075-6060
(602) 431-2733 FAX (602) 431-2733

THE SUM OF EIGHT THOUSAND DOLLARS

CYNTHIA REYNOSO
4305 N. 129TH DR.
LITCHFIELD PARK, AZ 85340

DATE
09/07/2004

AMOUNT
********8,000.00

027238

EXHIBIT L

AIR UTILITY SPECIALISTS, INC.

THE SUM OF FIVE THOUSAND DOLLARS

PAY
TO THE
ORDER
OF

CYNTHIA REYNOSO
13305 N. 129TH DR.
LITCHFIELD PARK, AZ 85340

Cynthia Reynoso

10/22/2004

AMOUNT

$5,000.00

27435

027435

EXHIBIT M



EXHIBIT N

CYNTHIA REYNOSO
4305 N. 129TH DR.
LITCHFIELD PARK, AZ 85340

THE SUM OF THREE THOUSAND FIVE HUNDRED DOLLARS

04/22/2005

*************3,500.00

28105

028105

0033    16096

EXHIBIT O

```
***********************
***    TX REPORT    ***
***********************

TRANSMISSION OK

TX/RX NO            1692
CONNECTION TEL.              3826070
CONNECTION ID
ST. TIME            06/08 16:30
USAGE T             12'52
PGS.                35
RESULT              OK
```

COPY

JUN 0 6 2005

MICHAEL K. JEANES, CLERK
J. CALHOON
DEPUTY CLERK

1  Peter Strojnik, 6464
   THE LAW FIRM OF PETER STROJNIK
2  3030 North Central Avenue, Suite 1401
   Phoenix, Arizona 85012
3  Telephone: 602-297-3019
   Facsimile: 602-297-3176
4  e-mail: Strojnik@nol.com; lawyer@strojnik.com
   Attorney for Defendants
5

6           IN THE IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

7                IN AND FOR THE COUNTY OF MARICOPA

8

9                                    )  NO. CV 2005-008557
                                     )
10 CYNTHIA  REYNOSO,  an  Arizona    )
   Resident                          )
11                                   )      VERIFIED COMPULSORY
                          Plaintiff, )         COUNTERCLAIM
12                                   )
               vs.                   )   (AR Utility Specialists, Inc.)
13                                   )
   ALEJANDRO REYNOSO, an Arizona     )   Embezzlement and Conversion
14 resident; AR UTILITY SPECIALISTS, )
   INC.; ARUSI, Inc., an Arizona     )        Conspiracy
15 Corporation, f/k/a BINARY MASS    )
   PROPULSION SYSTEMS, INC.          )     Breach of Fiduciary Duty
16                                   )
                        Defendants.  )  Pattern of Unlawful Activity in Violation of
17                                   )    State Statute A.R.S. 13-2314.04
   _____    )
18                                   )        Injunction
   AR UTILITY SPECIALISTS, INC. an   )
19 Arizona Corporation,              )
                                     )
                 Counterplaintiff    )
```